OPINION
{¶ 1} David McMasters is appealing from his conviction of menacing, a fourth degree misdemeanor, in violation of R.C. 2903.22. He was convicted by the trial judge following a bench trial in the Vandalia Municipal Court and was sentenced to one year probation. He has timely filed an appeal, assigning as error that the conviction was both against the manifest weight of the evidence and based upon insufficient evidence.
 {¶ 2} When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997), 78 Ohio St.3d 380, 387, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility. State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288, unreported. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. Martin, supra, at 175.
 {¶ 3} The circumstances that led to the conviction involved a heated exchange between the defendant and a co-employee, Kimberly J. Presley. We shall not go into the reasons for the exchange here, although it will be suggested later in this decision.
 {¶ 4} Presley testified at the hearing that the defendant had threatened her, "got in my face," looked like "he wanted to kill me" and "bumped me . . . and pushed me backwards," and in the course of the confrontation defendant "had his fist drawn." (Tr. 6-7). She knew the defendant kept a gun handy and she therefore felt his threats were credible. She stated "I was petrified." (Tr. 8). The confrontation so upset her that on doctor's orders she left work and indeed missed two months of work. She further testified that she is still scared of the defendant. (Tr. 9).
 {¶ 5} There is no argument that voices were raised in the confrontation and that both parties were screaming. (Tr. 10).
 {¶ 6} Presley's testimony is supported by that of two fellow co-workers who witnessed the confrontation. James L. Wolf testified that he saw the defendant in an "agitated mood" and the defendant "had his right fist back here behind him" and it was clenched. (Tr. 16-17).
 {¶ 7} Tammy Dunaway testified that she saw the defendant push Ms. Presley with his chest and "I thought she was going to fall." The look on the defendant's face "scared me," she testified, and further "I remember his arm coming up and clench." (Tr. 23-25).
 {¶ 8} The defendant took the stand and categorically denied threatening Ms. Presley, whom he claimed started yelling at him first. He further denied he ever bumped her with his chest. (Tr. 29-31). In response to a question from the bench asking why the defendant wants the court to believe his co-workers are lying, the defendant responded that it was because "of what happened between Julie Huwer and I." (Tr. 37). Here, the defendant is referring to the fact known by his fellow co-workers that he and Julie Huwer were having a relationship. Huwer also testified in support of the defendant's testimony. On cross, she admitted to this relationship with the defendant and that because of it both she and the defendant are being disciplined, and she admitted that her job was in jeopardy.
 {¶ 9} At the conclusion of the bench trial, the judge rendered its decision as follows:
 {¶ 10} ". . . the court, having heard the evidence and having the opportunity to evaluate the credibility of the witnesses and the reasoning for their testimony, including any interest in the outcome of the litigation, finds the state has sustained its burden of proof beyond a reasonable doubt, accordingly, finds the defendant guilty of the offense of menacing." (Tr. 45).
 {¶ 11} Here again we have the classic case of a trial court having to choose between two conflicting sets of testimony. As we stated earlier, we must afford substantial deference to a trial court's determination of credibility. Lawson, supra. In its decision, quoted above, the court explicitly based its decision on its finding of the credibility of the witnesses for the state, including the victim and two unbiased witnesses, as against the testimony of the defendant and his romantically involved co-worker. The court even noted that those two had motivation to testify that there was no menacing as each were up for disciplinary proceedings.
 {¶ 12} It is settled law that credibility is for the trier of the facts and "where there exists competent and credible evidence supporting the findings and conclusions of the trial court, deference to such findings and conclusions must be given by the reviewing court." Myers v.Garson (1993), 66 Ohio St.3d 610, 614. As the Supreme Court of Ohio observed in Seaons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, at 80: "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Such deference is particularly important in light of research that indicates that as much as "ninety percent of the total meaning of testimony is interpreted through non-verbal behavior, such as voice inflection, hand gestures, and the overall visual demeanor of the witness. The witness' choice of words accounts for only ten percent of the meaning of their testimony." State v. Evans (1993),67 Ohio St.3d 405, 410-411.
 {¶ 13} The Supreme Court of Ohio has stated: "[w]here reasonable minds can reach different conclusions upon conflicting evidence, determination as to what occurred is a question for the trier of fact."State v. Jenks (1991), 61 Ohio St.3d 259, 279. Moreover, a credibility call between conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its judgment for that of the finder of fact. State v. Awan (1986), 22 Ohio St.3d 120, 123. The assignment of error that the conviction is against the manifest weight of the evidence is overruled.
 {¶ 14} Having found that the trial court's factfinding was not against the manifest weight of the evidence, this court need not now specifically discuss the sufficiency of the evidence. A determination that a finding is not contrary to the manifest weight of the evidence is also dispositive of the issue of sufficiency. Bowen v. Bowen (1999),132 Ohio App.3d 616, 638. The assignment of error as to the sufficiency of the evidence is, therefore, also overruled and the judgment is affirmed.
BROGAN, J. and WOLFF, J., concur.